# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

PHILLIP LEE GREEN,                )
                                  )
        Petitioner,               )
                                  )
v.                                )        Case No. CV408-234
                                  )
WILLIAM TERRY and                 )
THE ATTORNEY GENERAL OF           )
THE STATE OF GEORGIA,             )
                                  )
        Respondents.              )

# REPORT AND RECOMMENDATION

Phillip Lee Green petitions this Court (doc. 1), over the respondents' opposition (doc. 24), for 28 U.S.C. § 2254 relief. For the following reasons, his petition should be **DENIED**.

## I. BACKGROUND

A Chatham County jury convicted Green as a recidivist for robbery by sudden snatching from a person over 65 years old. (Doc. 24-2 at 1.) He was sentenced to twenty years' imprisonment with eight to serve. (*Id.*) Green's appellate history is driven by the choices he made along the

way: Represented at trial by several different attorneys, he released three attorneys over the course of his appeal (doc. 25-4 at 41-43) and proceeded pro se.[1]  (Doc. 25-5 at 4).  Then his appeal was dismissed because he failed to timely file an appellate brief.  (*Id.*)  He unsuccessfully moved for state habeas relief.[2]  (Docs. 25-2 & 25-3.)  The Georgia Supreme Court later denied his application for a certificate of probable cause to appeal that ruling.  (Doc. 25-16.)

Green filed the present petition, asserting six grounds for relief:

---

[1] Green was consistently dissatisfied with his representation.  He was initially represented at trial by Steven Sparger.  (Doc. 1 at 7.)  Green terminated Sparger, and the public defender's office asked Jonah Pine to "handle the case knowing that [his] rapport with [his] clients [was] typically very good, and they figured that [he] would be able to maintain a relationship with Mr. Green long enough to actually get through the trial."  (Doc. 25-4 at 55 (state habeas transcript).)  Green decided to pursue claims of ineffective assistance of counsel in his motion for new trial, so he terminated Pine and was next represented by Don Lowe.  (Doc. 25-6 at 70 (motion for new trial transcript).)  He then terminated Lowe and was appointed Mr. Yekel.  (*Id.*)  Then, "Green insisted on having a Public Defender[, so] Ms. Pittman from the Public Defender's office was appointed.  [But he ultimately] became unhappy with [her, too] and determined to represent himself on th[e] . . . motion for new trial[;] Ms. Pittman was asked to remain as standby counsel. . . ."  (*Id.*)  The trial court informed Pittman that her "role as standby counsel will continue, although there's no active role, as far as I can see, unless you are contacted by Mr. Green with a request for assistance for the preparation of whatever documents he might need if the case goes to the Court of Appeals."  (Doc. 35-7 at 44.)

[2] Since Green alleged that his standby appellate counsel was ineffective in failing to file his appellate brief, he was permitted to seek an out-of-time appeal through a motion for out-of-time appeal or through habeas corpus.  12 GLENDA K. HARNAD, GEORGIA PROCEDURE CRIMINAL PROCEDURE § 34:42 (2008).  Green initially filed a motion for an out-of-time appeal, but he later withdrew that motion and filed his state habeas petition.  (Doc. 25-5 at 8.)

(1) he was illegally arrested without probable cause;

(2) the prosecution knowingly allowed the use of perjured testimony;

(3) trial counsel was ineffective;

(4) his "show-up" identification was tainted;

(5) appellate counsel was ineffective for refusing to file an appellate brief; and

(6) the trial judge erred by giving "the pattern jury charge in a case that consisted entirely on identification alone."

(Doc. 1 at 5-14.)

## II. <u>STANDARD OF REVIEW</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") placed "a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bell v. Cone*, 535 U.S. 685, 693 (2002) (AEDPA was intended "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."); *see Peterka v. McNeil*, 532 F.3d 1199, 1200-01 (11th Cir. 2008) (under AEDPA a federal court's review of a state court ruling is "greatly circumscribed and highly deferential to the state

courts") (citation omitted); *Trotter v. Sec'y, Dep't of Corr.*, 535 F.3d 1286, 1290 (11th Cir. 2008) (AEDPA limits a federal court's review of a state court's decisions "and establishes a general framework of substantial deference for reviewing every issue that the state courts have decided.") (citations omitted). These restrictions on federal habeas review are set forth in 28 U.S.C. § 2254(d), which provides that a federal court may grant a writ of habeas corpus for a claim adjudicated on the merits in state court only if the state court adjudication

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

The "threshold question" under § 2254(d)(1) is whether the habeas petitioner is seeking to apply a rule of law that was clearly established at the time his state court conviction became final. *Williams*, 529 U.S. at 390. Since the statute expressly provides that only pronouncements "by the Supreme Court of the United States" qualify as "clearly established Federal law," 28 U.S.C. § 2254(d)(1), a federal habeas court may not look

to the "the case law of the lower federal courts" in determining what federal law is "clearly established." *Putnam v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001). Further, the statute "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412. These "holdings -- the exclusive touchstone for clearly established federal law -- must be construed narrowly and consist only of something akin to on-point holdings." *House v. Hatch*, 527 F.3d 1010, 1015 (10th Cir. 2008). Unless a prior Supreme Court decision "squarely addresses" the issue presented in the habeas case, *Wright v. Van Patten*, 552 U.S. 120, 128 S. Ct. 743, 746 (2008), or establishes a legal principle that "clearly extend[s]" to the conduct at issue in that case, then it cannot be said that the law is clearly established under AEDPA. *Id.* at 745; *Moses v. Payne*, 555 F.3d 742, 754 (9th Cir. 2009). Thus, "federal courts may no longer extract clearly established law from the general legal principles developed in factually distinct contexts." *House*, 527 F.3d at 1017. If the federal habeas court makes a threshold determination that the law was not clearly established at the time the state court issued its decision, then that finding is dispositive in the § 2254(d)(1) analysis, and there is

no need for the Court to assess whether the state court's decision conflicts with controlling United States Supreme Court authority *Id.*

But where the Supreme Court has decided the issue addressed by the state court, the federal habeas court must determine whether the state court's decision is "contrary to" or involves an "unreasonable application" of the controlling precedent. These § 2254(d)(1) clauses have independent meaning and furnish separate bases for reviewing a state court's decisions. *Bell*, 535 U.S. at 694; *Williams*, 529 U.S. at 404-05; *Putnam*, 268 F.3d at 1241 (11th Cir. 2001). A state court decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13. In contrast, a state court decision involves an "unreasonable application" of clearly established federal law where it correctly identifies the governing legal rule from the Supreme Court's cases but applies it unreasonably to the facts of the particular prisoner's case. *Id.* at 407-08, 413. Thus, "[a] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the

relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Instead, the state court's application of Supreme Court precedent must be "objectively unreasonable." *Id.* at 409; *Bell*, 535 U.S. at 694; *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001). That presents "a substantially higher threshold" than the pre-AEDPA standard. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

Also federal courts must presume state court factual findings to be correct unless they are rebutted by the petitioner "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This statutory presumption of correctness applies to findings of fact made by both state trial and appellate courts. *Dill v. Allen*, 488 F.3d 1344, 1354 (11th Cir. 2007). Such deference does not apply, however, to mixed determinations of law and fact. *Parker*, 244 F.3d at 836.

Finally, a state court's decision rejecting a constitutional claim on the merits is entitled to deference even if the decision is summary in nature and offers no discussion of the court's reasoning. *Wright v. Moore*, 278 F.3d 1245, 1253-54 (11th Cir. 2002) (two-sentence opinion affirming defendant's conviction constituted a rejection of his claim on

the merits so as to warrant deference); *Parker*, 331 F.3d at 776 ("the summary nature of [the] decision does not lessen the deference that it is due").

## III. ANALYSIS

A § 2254 petitioner who fails to properly raise his federal claims in state court is procedurally barred from pursuing those claims in federal court absent a showing of cause for and actual prejudice from the default. *Bailey v. Nagle*, 172 F.3d 1299, 1302 (11th Cir. 1999) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)). Such a procedural default arises when the state court correctly applies a procedural default principle of state law to arrive at the conclusion that the petitioner's federal claims are barred. *Id.* (citing *Atkins v. Singletary*, 965 F.2d 952, 956 (11th Cir. 1992)).

Here, the state habeas court explicitly found (and Green admits (doc. 27 at 4)) that grounds 1-4 and 6 of Green's present petition were procedurally barred under O.C.G.A. § 9-14-48(d), which prohibits review of claims not raised in a timely manner under the proper procedure at trial or on direct appeal. (Doc. 25-3 at 5.) Because the claims were available to be asserted but were not preserved on appeal, the state

habeas court declined to consider them. Since "the last state court rendering judgment clearly and expressly stated that its judgment rested on a procedural bar, i.e., an adequate and independent state ground," *Bailey*, 172 F.3d at 1303, this Court must respect its determination.[3] *Atkins*, 965 F.2d at 956 (federal review of a petitioner's claim is barred by the procedural-default doctrine if the last state court to review the claim states clearly and expressly that its judgment rests on a procedural bar, and that bar provides an adequate and independent state ground for denying relief) (citation omitted).

Nevertheless, if Green can demonstrate that he qualifies for an exception to the procedural bar, this Court must review his claims. *See Bailey*, 172 F.3d at 1302. To qualify for an exception, Green must demonstrate "cause and prejudice" for his state court procedural

---

[3] As noted by the Supreme Court:

In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

default.[4] *Johnson v. Singletary*, 938 F.2d 1166, 117475 (11th Cir. 1991). "Cause" excusing a procedural default can be established by showing that appellate counsel was constitutionally ineffective. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Green, who initially proceeded pro se on appeal,[5] argues in his fifth ground (his only non-defaulted ground) that Gabrielle A. Pittman, his standby appellate counsel, performed deficiently by failing to preserve his other grounds for relief. (Doc. 1 at 6; doc. 27 at 5-6.) Her ineffective assistance, he contends, resulted in the dismissal of his appeal (doc. 1 at 6), and thus is "cause" excusing his procedural default. The state habeas court, however, rejected Green's claim, finding that

---

[4] Actual innocence can also excuse a procedural default. *Johnson*, 938 F.2d at 1174-75. The actual innocence standard is exceedingly narrow, however. "To meet this standard, a [petitioner] must show that "'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994) (quoting *Murray*, 477 U.S. at 496). Actual innocence refers to factual innocence, not mere legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623-24 (1998) (quotations and citations omitted). The Supreme Court has indicated that a petitioner must present "new reliable evidence" establishing that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 536-37 (2006) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). While Green contends that he is innocent, he puts forward no evidence of actual innocence, so his procedural default cannot be excused on that ground.

[5] As noted by the state habeas court, Green does not dispute that he voluntarily waived the assistance of appellate counsel. (Doc. 25-3 at 7.)

> Ms. Pittman did not represent Petitioner on appeal or cause Petitioner's appeal to be dismissed. Petitioner represented himself on appeal. . . . As Petitioner was his own appellate counsel, not Ms. Pittman, Petitioner's claim of ineffective assistance of counsel against Ms. Pittman is moot, and/or lacks merit factually.

(Doc. 25-3 at 7.) In essence, then, the state court found that Green remained pro se throughout his appellate proceedings and that since he had abandoned his right to counsel, he cannot claim ineffectiveness on the part of standby counsel.

This Court must defer to the state habeas court's finding that Green acted as "his own appellate counsel," unless rebutted with "clear and convincing evidence." 28 U.S.C. § 2254(e). In support of that burden, Green states that he "contacted [Pittman] to do his appeal, but she refused to do it and notified the petitioner nine days after his deadline to appeal which cause[d] it to be dismissed." (Doc. 1 at 6.) Green's best evidence that he sought to relinquish pro se representation comes from his June 19, 2006 letter to the public defender's office requesting Pittman's assistance in filing his appellate brief:

> I represented myself at my motion for new trial hearing. . . . My standby attorney was Ms. Amber Pittman from the Public Defenders [sic] office. I wish not to proceed any f[u]rther "pro se." I would like to have Ms. Pittman back as my attorney on appeals. I have already sent in my notice of appeals. I would like Ms. Pittman

back as my attorney *with the understanding that she will argue all grounds that I have raised on my motion for new trial.* Please notify her immediately concerning my need for her as my attorney. Thank you.

(Doc. 25-5 at 17 (emphasis added).)[6] Thus, while Green explicitly stated that he wanted attorney representation and wished to abandon his pro se status, he also demanded that Pittman raise all of his requested grounds for relief. On July 12, 2006, over a month before the brief was due, Pittman responded:

I would be happy to write you[r] direct appeal brief. However, as an attorney I am duty bound to put forth only those claims which I find to be meritorious and beneficial to you as my client. With that being said *I cannot and will not agree to put forth all of the grounds you raised at the motion for new trial.* I would only raise those

---

[6] In his motion before the state trial court for an out of time appeal, which he subsequently voluntarily dismissed (doc. 25-4 at 113), Green further elucidated his argument:

The appellant told his lawyer she could raise whatever grounds she wanted, *as long as she included "perjury" and "illegal arrest."* The appellant told his lawyer if she could not raises [sic] these grounds, then let him know before his deadline to file his brief on August 15th 2006 in order that he may timely file it himself. The appellant received a letter from his lawyer dated August 24th 2006 (nine days after his deadline) stating that she did not file his brief because she did not see perjury in the record evidence. The appellant's transcripts undeniabley [sic] shows perjury committed by Savannah Police officers. The appellant has had three appeals lawyers appointed by the state and each one refused to raise the ground of perjury at his motion for new trial and now at the appeals level because it's a felony committed by a police officer whom they are trying to protect.

(Doc. 25-5 at 1 (emphasis added).)

grounds which I, as an attorney, found to have merit.[7] [¶] If this would be acceptable to you then I would be happy to represent you on direct appeal. Please let me know.

---

[7] As Pittman recognized, Green's requested grounds -- perjury and illegal arrest -- were non-starters. The state played the police dispatch tape during the trial. (Doc. 25-12 at 22-33.) Trinity Height, a witness, described the purse-snatching suspect to dispatch as a black male with dreadlocks wearing a gold shirt and *black* pants. (*Id.* at 23-24.) A few minutes later, the victim, Ms. Alberta McCray, pointed out the suspect to her church group friend Carolyn DeVillers. (Doc. 25-11 at 49.) DeVillers also called into the police and stated that the suspect, again a black male with dreadlocks, was wearing a gold shirt and *burgundy* pants. (Doc. 25-12 at 24, 26.) She estimated that he was about five-feet-six-inches tall and was in his mid-twenties (Green is six-feet-two-inches tall and he is in his late thirties). (*Id.* at 27, 28.)

Height gave a statement to the officer at the scene and then headed home. (Doc. 25-11 at 110.) On the way, he "saw the guy [he] had just called 911 on" outside of a convenience store. (*Id.* at 111.) Height returned to the scene and had the police follow him to the convenience store where he had spotted Green earlier. (*Id.* at 112-113.) Green was standing outside in a group of several men. Height pointed Green out to Officer Cost; she asked Green to stop, but she ultimately had to take him down. (*Id.* at 113.) Height testified that "[the officers] put [Green] in the car and [Officer Cost] asked me, she said, do you see the person that did it. I say, yes. And she said, where is he[?] I pointed to [Green] in the car. She said, are you sure[?] I said, yes, I am." (*Id.*) Officer Cost brought Green back to the scene for identification by the suspect. (*Id.*) The officers asked McCray if she "saw the person....that did this" and she said "yes, that's him." (*Id.*)

The officers reasonably detained a black male with dreadlocks wearing a gold shirt and burgundy pants, who was admittedly within running distance of the crime and who had just been identified by a person who was at the scene of the crime. While height, age, and weight are important facts, they are difficult to discern in a fleeing suspect -- all-in-all, the discrepancies were minor compared to the consistencies. When Height positively identified Green, the police had probable cause to arrest him. *See Illinois v.* Gates, 462 U.S. 231, 235, 244 n.13 (1983) (probable cause requires neither convincing proof nor a prima facie showing of criminal activity; a "substantial chance" of criminal activity is all that is required); *United States v. Jenkins*, 901 F.2d 1075, 1080 (11th Cir. 1990) (probable cause need not arise from direct observation but may be inferred from the circumstances involved); *see also Michigan v. DeFillippo*, 443 U.S. 31, 36 ("The validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest.").

(Doc. 26-2 at 2 (emphasis and footnote added).)[8]  Green, however, never

let her know.  Although he responded, he did not agree to her terms.  (*See*

doc. 26-2 at 4.)  Pittman mailed Green another letter on August 24, 2006

(which he characterized above as Pittman's nine-day-late refusal to

prepare a brief on his behalf):

> I [indicated that I] would only represent you if you were willing to
> allow me to raise the issues on appeal that I find meritorious.
> Because you failed to indicate that you were willing to agree to

---

As to the police officers' alleged perjury, Green presents no evidence indicating
that the government purposefully introduced false testimony.  He attacks the
testimony of the officers involved in his arrest.  For instance, Officer Cost, at the
pretrial motion to suppress, stated that dispatch described the suspect as six feet tall
and around 200 pounds.  (Doc. 25-11 at 4.)  Police dispatch, however, described the
suspect as five-feet-six-inches tall.  (Doc. 1 at 6.)  Based upon the dispatch
information, Cost was clearly mistaken, but that does not mean that she
intentionally gave false evidence.  *See Jacobs v. Singletary*, 952 F.2d 1282, 1287 n.3
(11th Cir. 1992) ("We have previously ruled that only knowing use of perjured
testimony constitutes a due process violation.").  Officer Walker testified that two
witnesses, Height and DeVillers, actually saw the robbery take place.  (Doc. 25-11 at
97.)  Again, he was mistaken.  But, as Green's counsel noted at the state habeas
hearing:

> I don't know that there was any evidence that [the officer's testimony was
> perjured].  There's an element of intent in perjury where you are knowingly
> telling a mistruth.  I don't know that the officer was purposefully lying.  I
> don't know why he would.  By giving inconsistent testimony, he would have
> damaged the State's case and that's exactly what he did.  In my opinion, and
> it's only an opinion, I just think the officer had no clue and no preparation
> going into that trial.  I don't think he even reviewed his police report.

(Doc. 24-4 at 91.)  Consequently, Pittman had good reason to jettison the arguments
from her appellate brief.

[8] Green provided the Court with Pittman's correspondence.  (Doc. 26-2 at 1-4.)

those terms, I can not represent you.  As such, I have not filed a brief in your case.

As I have told you time and time again, I have neither the power nor the ability to bring about perjury charges.  That job is for a prosecutor or judge.  More importantly, while I found there were inconsistencies in the testimony given at your trial and events leading up to it, I see no evidence of perjury in your case.  Perjury requires that a person make a knowing and willing false statement.  Nothing shows that the statement anyone made were knowingly and willingly false.

You chose to proceed pro se in your case because you were unhappy with my representation.  At the end of the motion for new trial hearing Judge Karpf rel[i]eved me of my duty to represent you.[9]  As an attorney my duty is to represent and counsel you to the best of my abilities.  I have tried my best to do so.  I wish you luck in your continued endeavors.

(*Id.* at 1 (footnote added).)   Pittman sent Green another letter on

October 26, 2006:

[Y]ou never agreed to allow me to represent you only on those claims I found non-frivolous.  Therefore, I did not file a brief on your behalf.  [¶]  As soon as I could, on August 23, I responded that I because [sic] you failed to indicate that you were willing to allow me to represent you in an unethical manner, I could not represent you and did not file a brief on your behalf. . . .

As I Stated [sic] earlier, legal ethics dictate that I could only represent you if you were willing to allow me to raise non-frivolous

_____

[9]   At the end of the hearing on the motion for new trial, Judge Karpf, of the State Superior Court, notified Pittman that her "roll as standby counsel will continue, although there's no active role, as far as I can see, unless you are contacted by Mr. Green with a request for assistance for the preparation of whatever documents he might need if the case goes to the Court of Appeals." (Doc. 25-7 at 44.)

issues on appeal. . . . [¶] Contrary to your allegations, I did not intentionally allow your time to expire to file your brief. Nor do I know of any perjuries against you. I am not attempting to protect the police. As I have explained to you repeatedly, I found several issues in your case with merit, in particular, your trial lawyer's failure to obtain an eyewitness identification expert, to adequately argue your motion to suppress the out of court identification, and the jury charges. It is my duty as an appellate lawyer to raise meritorious issues. . . . [¶] At this point, I would suggest that you file your brief late and/or file a motion under Rule 41 of the Rules of the Court of Appeals requesting permission to file an out of time brief.[10]

(Doc. 26-2 at 3-4 (footnotes added).)

Had Green terminated self-representation altogether, as he alleges, and handed over "the reins of his defense" to Pittman, he could raise a claim of ineffectiveness against her. *Cf. United States v. Swinney*, 920 F.2d 494, 498 (8th Cir. 1992) (noting that defendants remain free to "elevate standby counsel to a lead counsel role, thereby waiving" self-

---

[10] The Georgia Court of Appeals did not dismiss Green's appeal until November 9, 2006, long after Pittman declined to file a brief under his requested terms, noting:

Appellant Green, *appearing pro se*, was required to have filed an enumeration of errors and brief in this Court by August 15, 2006. . . . *No such filing has been made* as of November 7, 2006. On November 2, 2006, Appellant Green filed an untimely request for an extension of time which is hereby denied. This appeal is hereby DISMISSED. . . .

(Doc. 25-5 at 4 (emphasis added).) Hence, months after Pittman declined to represent Green under his requested conditions, Green still failed to file a brief supporting his appeal. He cites no impediment to doing so.

representation) (citing *McKaskle v. Wiggins*, 465 U.S. 168, 182 (1984)). The letters show, however, that Green repeatedly demanded that Pittman assert grounds in her appellate brief that she believed to be frivolous. In essence, he conditioned Ms. Pittman's appearance as his appellate attorney upon his right to continue as co-counsel. Thus, Green has not shown by clear and convincing evidence that the state habeas court erred in finding that he never intended to step back and allow Pittman to act as his appellate counsel -- i.e., that he intended to relinquish his pro se status.

That does not end the inquiry, however, for the Court must determine whether the state habeas court correctly determined that Green, proceeding pro se, could not raise a claim of ineffectiveness against Pittman for her actions as standby counsel.

A defendant's choice to proceed pro se necessarily acts as a waiver of any future claim regarding the denial of effective assistance of counsel.[11]  *See Faretta v. California*, 422 U.S. 806, 834 n.46 (1974) ("a

---

[11] The Sixth Amendment guarantees an accused the right to present his own defense at *trial*. *Faretta v. California*, 422 U.S. 806, 821 (1974) ("The Sixth Amendment, when naturally read, thus implies a right of self-representation."). But there is no federal constitutional right to self-representation on appeal (even where a state confers a statutory right to an appeal), though the states are free to recognize such a right, *Martinez v. Court of Appeal*, 528 U.S. 152, 163 (2000), which Georgia

defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel'"). But there is a complicating factor here, since Pittman was appointed as Green's standby counsel.[12] This circumstance raises questions about the appropriate constitutional standards to apply. The general rule applied by federal appellate courts is that a pro se defendant cannot claim ineffective assistance by standby counsel if he has retained control over the proceedings, at least in the trial context. *Simpson v. Battaglia*, 458 F.3d 585, 597-99 (7th Cir. 2006) (at trial, "the inadequacy of standby counsel's performance, without the defendant's relinquishment of his *Faretta* right, cannot give rise to an ineffective assistance of counsel claim"); *United States v. Morrison*, 153 F.3d 34, 55 (2d Cir. 1998) (no ineffectiveness claims allowed where defendant "retained control of his own defense throughout the proceedings"). The

---

has done. *Cook v. State*, 240 Ga. App. 496, 675 S.E.2d 245, 246 (2009) ("while the State is correct that the federal constitution does not recognize the right asserted by [defendant], Georgia law does recognize a defendant's right to represent himself on appeal.").

[12] Courts have "the discretion to appoint standby counsel for a defendant who elects self-representation, even over the defendant's objections." 21A Am. Jur. 2d *Crim. Law* § 1160 (2009); *see Faretta*, 422 U.S. 834 n. 46 ("Of course, a State may -- even over objection by the accused -- appoint a 'standby counsel' to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary.").

United States Supreme Court, however, has not provided any guidance on the issue. Consequently, there was no "clearly established" federal law to guide the state court when it announced its decision. *Van Patten*, 552 U.S. 120, 128 S.Ct. at 747. The state habeas court relied, instead, upon a rule established by the Georgia Supreme Court, which prohibits pro se criminal defendants acting "either solely *or in conjunction* with representation or assistance by an attorney [from asserting] a claim of ineffective assistance of counsel with respect to any stage of the proceedings wherein he was counsel." (Doc. 25-3 at 7 (emphasis added).) The state habeas court broadly interpreted the rule to mean that if a defendant retains any authority at all to act as his own counsel, then he is precluded from asserting an ineffectiveness claim against standby counsel. (Doc. 25-3 at 7.) Since there is no "clearly established federal law" on the issue, 28 U.S.C. § 2254(d)(1), the state court's determination is not reviewable in this Court. *House*, 527 F.3d at 1017. Consequently, there is no need to assess whether the state court applied controlling Supreme Court authority in an objectively unreasonable manner or contrary to law.[13] *Williams*, 529 U.S. at 409.

---

[13] Moreover, the Court is convinced that Pittman's assistance was adequate.

## IV. CONCLUSION

Green has neither rebutted the state habeas court's finding that he remained pro se throughout his appeal nor shown that its holding was contrary to or unreasonably applied controlling United States Supreme Court precedent. Consequently, his claim of ineffective assistance of standby appellate counsel is without merit. And as he has not shown any other grounds for excusing the procedural default of his remaining claims, Green's petition for § 2254 relief (doc. 1) should be **DENIED**.

Moreover, applying the Certificate of Appealability ("COA") standards, which are set forth in *Brown v. United States*, 2009 WL 307872 at * 1-2 (S.D. Ga. Feb. 9, 2009) (unpublished), the Court discerns no COA-worthy issues at this stage of the litigation, so no COA should issue. 28 U.S.C. § 2253(c)(1); *see Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (approving sua sponte denial of COA before movant filed a notice of appeal). And, as there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, in forma pauperis status on appeal should likewise be **DENIED**. 28 U.S.C. § 1915(a)(3).

---

Her letters show that she did all that she could to help an incredibly difficult client and that any prejudice to Green's case was self-inflicted.

**SO REPORTED AND RECOMMENDED** this ___29th___ day of

June, 2009.

/s/ G.R. SMITH
**UNITED STATES MAGISTRATE JUDGE**
**SOUTHERN DISTRICT OF GEORGIA**